## W. G. DUNCAN COAL CO. v. JONES.

Court of Appeals of Kentucky
Jan. 30, 1953.

Duncan, Humphrey, Peabody & Oldham, Louisville, Jarvis & Ross, Greenville, for appellant.

W. D. Bratcher, Greenville, for appellee.

COMBS, Justice.

Plaintiff, Rhea Jones, recovered judgment in the lower court for $500 against the W. G. Duncan Coal Company for damage to crops allegedly caused by the company's deposit of poisonous mine water in a stream which overflows a portion of plaintiff's farm.

The first ground argued for reversal is that plaintiff is not the sole owner of the farm. It was developed during the proceedings that plaintiff and his wife hold title to the farm jointly, with the right of survivorship. Although it would have been better practice to join the wife as a plaintiff, we do not regard the omission as fatal. Plaintiff alleged ownership and possession in himself, and his possession was sufficiently established. Trespass is a possessory action and may be maintained by one in possession of land against a trespasser without title. Eureka Coal & Mineral Co. v. Johnson, 186 Ky. 134, 216 S.W. 91; Norfolk & W. Ry. Co. v. McCoy, 250 Ky. 190, 61 S.W.2d 1080. The judgment must be reversed for other reasons, and on return of the case to the trial court the judge should direct that plaintiff's wife be made a party to the action. Civil Code of Practice, section 28.

It is also insisted by the Company that it has a prescriptive easement to the use of the stream in question for the drainage of water from its mines. It is shown that the company has conducted mining operations since 1920 on the watershed which this stream drains, and water from the mines has been discharged into the stream during all of that period. Plaintiff and his wife purchased the land in 1945. This suit was filed in April, 1951, and damage to crops is claimed for the preceding five years. The company pleads continued use of the stream for drainage of water from its mines since the commencement of its operations, but we find no allegation that the conditions and circumstances have remained the same, or that there has been no increase in the volume of water channeled into the stream. In the absence of pleading and proof to this effect, the company could not, in any event, avail itself of the defense of prescriptive easement. However, since there may be another trial and the pleadings and proof might at that time adequately present the defense of prescriptive easement, we will dispose of that question in this opinion.

Plaintiff's right to damages is contingent upon a finding that the drainage of mine water into the stream constitutes a nuisance. The general rule as to a public nuisance is stated in 39 Am.Jur., Nuisances, section 201, page 476:

"Prescription or lapse of time cannot be relied on to establish a right to maintain a public nuisance. And in every jurisdiction except one, the courts have denied the defense of prescriptive right whether the proceeding is brought by the state or by an individual who has sustained special damage from the defendant's wrong."

The lone exception referred to in the quotation is Ireland v. Bowman & Cockrell, 130 Ky. 153, 113 S.W. 56, 17 Ann.Cas. 786, which holds that as against a particular individual a prescriptive right can be acquired to maintain a dam constituting a public nuisance.

On the other hand, it seems to be the majority rule that the right to maintain a private nuisance may be acquired by prescription. 39 Am.Jur., Nuisances, section 202, page 478; 66 C.J.S., Nuisances, § 91, page 849, Annotations 152 A.L.R. 344, and 39 A.L.R. 891. The case of Ireland v. Bowman, mentioned above, is cited in one of the annotations as supporting this rule.

The most recent Kentucky cases we have found on the subject are: Hall v. Budde, 1943, 293 Ky. 436, 169 S.W.2d 33, 167 A. L.R. 1361, and Green v. McCloud, 1946, 303 Ky. 207, 197 S.W.2d 258, 260. It is said in the Hall case: "The law is well settled * * * that there is no such thing as a prescriptive right to operate a nuisance." The case of Ireland v. Bowman is not mentioned. In the Green case it is said: "There is no prescriptive right to maintain a nuisance not purely private." The Ireland case is not mentioned, but the Hall case is cited on another point. It is noted, however, that in both the Hall case and the Green case the court was discussing a public nuisance, one being a sewer line case and the other involving a hog lot. We find no Kentucky case dealing exclusively with the right to maintain a private nuisance by reason of prescription and it is clear that the language used in the Hall case referred to a public nuisance.

■ The only difference between a private nuisance and a public nuisance is the extent or scope of the injurious effect. The former affects an individual or a limited number of individuals only. The latter affects the public at large, or such of them as may come in contact with it. There is no difference in the nature or character of the nuisance itself. 39 Am. Jur., Nuisances, section 7, page 284. It appears from the record in this case that if the condition complained of by plaintiff is a nuisance at all, it is a private nuisance, since there is no showing of injury to anyone other than plaintiff. We conclude, therefore, in line with the weight of authority, that if the company in this case has used the stream in question for the drainage of water from its mines for the statutory period of 15 years it has acquired the right to continue to use the stream for the same purpose, to the same extent, and under the same circumstances and conditions. But the right is not unqualified. If the nuisance is progressive in character, or has been enlarged during the prescriptive period relied upon to establish the easement, the defense of prescriptive easement is not available. 66 C.J.S., Nui-

sances, § 99, page 852, 39 Am.Jur., Nuisances, section 202, page 478; Annotation 152 A.L.R. 343, at page 352. There is some evidence here of a change in the nature of the mining operations, and it is argued in brief that the volume of water from the company's mines has increased. Since the evidence on another trial may not be the same, it is unnecessary to discuss that question in detail at this time.

■ The fact that plaintiff purchased his farm at a time when the nuisance may have existed does not estop him from maintaining an action of this character. 39 Am.Jur., Nuisances, section 197, page 472; Annotation 167 A.L.R. 1364, at page 1367; 66 C.J.S., Nuisances, § 8(c), page 744. But this may be considered as a factor in the determination of the "equities" of the case. Annotation 167 A.L.R. 1364, at page 1382; Hall v. Budde, 293 Ky. 436, 169 S.W.2d 33; Green v. McCloud, 303 Ky. 207, 197 S.W.2d 258.

■ The company also raises a question of evidence and the judgment must be reversed on that point. Plaintiff introduced testimony relating to overflow of the stream and damage to his crops, and some of the witnesses testified that the deposit of copperas in the water damaged the soil as well. As a counter measure, the company offered testimony concerning the condition of the land at the time of trial and photographs of crops on the land taken some three weeks prior thereto. We think this evidence was competent and that its exclusion was prejudicial to the company. Although the case was tried in 1951 and the last year for which plaintiff claimed damages was 1950, the excluded testimony had a direct bearing on the condition of the soil and quality of the crops during the period for which damages were sought. The jury would have been warranted in concluding that if the condition of the soil was such as to raise good crops in 1951, it might have been in such condition during some of the preceding five-year period.

■ Complaint is also made about the failure of the court to permit the jury

to view plaintiff's land. The question of whether a jury should view the premises is a matter within the discretion of the trial judge. Civil Code of Practice, section 318; Ford v. McQueary, Ky., 239 S.W.2d 486; Browning's Adm'x v. Louisville & N. R. Co., 294 Ky. 317, 171 S.W.2d 448. We find no abuse of that discretion in this case.

The use of the word "unlawfully" in one of the instructions is also criticized on the ground that there was no evidence of any unlawful act upon the part of the company. The instruction would have been in better form if the word "unlawfully" had been omitted. The use of the word apparently was an inadvertence and the court will doubtless make this correction if there is another trial of the case.

The judgment is reversed for proceedings consistent with this opinion.